IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| JOHN FRANKLIN MILAN, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )   Civil Action No.  3:05-CV-893-F |
| | ) |
| TALLAPOOSA COUNTY JAIL, et al. | ) |
| | ) |
|     Defendants. | ) |

## DEFENDANTS' SPECIAL REPORT

COME NOW Blake Jennings and Carolyn Moss, Defendants in the above-styled cause, and submit their Special Report to the Court.

## INTRODUCTION

On July 15, 2005, Plaintiff filed his Complaint in the United States District Court for the Northern District of Alabama.  That Court transferred the action to the United States District Court for the Middle District of Alabama on August 1, 2005.  On September 21, 2005, the Magistrate Judge entered a Report and Recommendation that the Tallapoosa County Jail be dismissed as a Defendant in this case.  That same date, the Court ordered Defendants Blake Jennings and Carolyn Moss to file a Special Report and Answer forty days from the date of the Order.

On June 2, 2005, Plaintiff was arrested on two warrants for probation violations.  (Exhibit A, Inmate File of John Franklin Milan, "Inmate File", Writ of Arrest dated May 26, 2005; Exhibit B, Inmate File, Arrest Narrative dated June 2, 2005.)  He was taken to the Tallapoosa County Jail and booked that same day.  (Exhibit C, Inmate File, In-Processing Check List dated June 2, 2005; Exhibit D, Inmate File, Inmate Property Forms dated June 2, 2005.)  A probation

revocation hearing was set for August 24, 2005, at which his probation was revoked. (Exhibit E, Inmate File, Order dated June 29, 2005; Exhibit F, Inmate File, Court Action/Arrest Authentication for dated August 24, 2005; Exhibit G, Inmate File, Conviction Report dated August 25, 2005.) On October 3, 2005, Plaintiff was released from the Tallapoosa County Jail into the custody of the Department of Corrections. (Exhibit H, Out-Processing Check List dated October 3, 2005.)

## PLAINTIFF'S ALLEGATIONS

Plaintiff's sole allegation is that he was given a Bible that had print that was too small and that he was denied a large print Bible. (Plaintiff's Complaint, p. 3-5.) Plaintiff requests that the Court order Defendants to give him a large print Bible. (Plaintiff's Complaint, p. 4).

## DEFENDANTS' RESPONSE TO PLAINTIFF'S ALLEGATIONS

Defendants deny the allegations made against them by Plaintiff as being untrue and completely without basis in law or fact. Defendants deny that they acted, or caused anyone to act, in such a manner as to deprive the Plaintiff of any right to which he was entitled. (Exhibit I, Affidavit of Blake Jennings, ¶ 4; Exhibit J, Affidavit of Carolyn Moss, ¶ 4.) Defendants raise the defenses of Eleventh Amendment immunity, qualified immunity, Plaintiff's failure to comply with the Prison Litigation Reform Act and additional defenses presented below. Defendants reserve the right to add additional defenses if any further pleading is required or allowed by the Court.

I.   **FACTS**

   A.   **Policy and Procedure Regarding Religious Activities of Inmates**

Two ministers come to the Tallapoosa County Jail once each week to provide religious counsel to all inmates. (Ex. I, ¶ 5; Ex. J, ¶ 5.) Further, it is the policy of the Tallapoosa County

Jail that any inmate will be permitted to visit with his minister, priest, or rabbi for the purpose of receiving spiritual counsel and/or the purpose of participating in a worship service. Inmates are informed of this policy via the Inmate Handbook. (Ex. I, ¶ 6; Ex. J, ¶ 6.) Bibles are regularly donated to the Jail and are issued to inmates upon their request. (Ex. I, ¶ 7; Ex. J, ¶ 7.) Because of safety and security concerns—primarily control of contraband—inmates are not allowed to have Bibles brought in from outside the Jail facility. (Ex. I, ¶ 8; Ex. J, ¶ 8.)

      **B.**      **Facts Regarding Plaintiff's Allegations**

On July 3, 2005, Plaintiff filled out an inmate request form stating that his mother was bringing his glasses. (Ex. J, ¶ 9; Exhibit K, Inmate File, Request Form dated July 3, 2005.) He further stated that he wanted his mother to bring him a Bible. (Ex. J, ¶ 9; Exhibit K.) Plaintiff was given his reading glasses on July 5, 2005. (Ex. J, ¶ 10; Exhibit K.) Because of the Jail's policy that Bibles are issued by the jail and not brought in from outside the Jail facility, Lieutenant Moss issued Plaintiff a Bible on July 6, 2005. (Ex. J, ¶ 11; Exhibit K.) The Plaintiff told Lieutenant Moss and Jail Administrator Jennings that the print on the Bible that he was issued was too small. (Ex. I, ¶ 9; Ex. J, ¶ 12.) However, there were no larger print Bibles available at the Jail. (Ex. I, ¶ 10; Ex. J, ¶ 13.) Therefore, Jail Administrator Jennings purchased two large print Bibles for the Jail and issued one to Plaintiff. (Exhibit L, Receipt for Giant Print Bibles; Ex. I, ¶ 11; Ex. J, ¶ 14.) After the large print Bible was issued to Plaintiff, the Defendants received the Complaint filed in this matter. (Ex. I, ¶ 12; Ex. J, ¶ 15.) When Plaintiff was released to the Department of Corrections, he took the Bible with him. (Ex. I, ¶ 13; Ex. J, ¶ 16.)

### C. Facts Regarding Plaintiff's Nonadherence with the Grievance Procedures at the Tallapoosa County Jail.

Internal grievance procedures at the Tallapoosa County Jail are available to all inmates. It is the policy of the Tallapoosa County Sheriff's Department that inmates are permitted to submit grievances and that each grievance will be acted upon. Inmates are given an Inmate Grievance Form to complete and return to a Tallapoosa County Jail staff member for any grievances they may have. (Ex. I, ¶ 14; Ex. J, ¶ 17.)

Plaintiff did not file a grievance with the jail concerning the allegations made the basis of his Complaint. The grievance filed with the Complaint was not filed with the jail, and the Defendants did not receive that grievance until the date they received the Complaint in this lawsuit. (Ex. I, ¶ 15; Ex. J, ¶ 18.)

## II.   LAW

### A. All claims by Plaintiff against Defendants in their official capacities must fail based on Eleventh Amendment immunity and because they are not "persons" under 42 U.S.C. § 1983.

Plaintiff's claims against Defendants in their official capacities are due to be dismissed for lack of subject matter jurisdiction; as such claims are barred by the Eleventh Amendment to the United States Constitution. Parker v. Williams, 862 F.2d 1471, 1476 (11th Cir. 1989) (holding a sheriff sued in his official capacity is entitled to Eleventh Amendment immunity); Free v. Granger, 887 F.2d 1552, 1557 (11th Cir. 1989) (holding that a sheriff sued in his official capacity is entitled to Eleventh Amendment immunity); Carr v. City of Florence, Ala., 918 F.2d 1521, 1525 (11th Cir. 1990) (holding a deputy sheriff sued in his official capacity is entitled to Eleventh Amendment immunity); Lancaster v. Monroe County, 116 F.3d 1419, 1430-31 (11th Cir. 1997) (extending Eleventh Amendment immunity to include jailers employed by county sheriffs).

In addition, the official capacity claims must fail because 42 U.S.C. § 1983 prohibits a <u>person</u>, acting under color of law, from depriving another of his rights secured by the United States Constitution. 42 U.S.C. § 1983. The United States Supreme Court has held that state officials, in their official capacities, are not "persons" under § 1983. <u>Will v. Michigan Dept. of State Police</u>, 491 U.S. 58, 71 (1989). Any claims against Defendants in their official capacities should therefore be dismissed because they are not "persons" under § 1983 and therefore claims against them in their official capacities fail to state a claim upon which relief can be granted. <u>Id.</u>; <u>Carr v. City of Florence, Ala.</u>, 916 F.2d 1521, 1525 n.3 (11th Cir. 1990).

**B.    Plaintiff's failure to comply with the Prison Litigation Reform Act bars the Complaint.**

**1.    Plaintiff has failed to exhaust all Administrative Remedies.**

Under the Prison Litigation Reform Act ("PLRA"), an inmate is required to exhaust all administrative remedies before instituting an action under 42 U.S.C. § 1983. 42 U.S.C. § 1997e(a). The Plaintiff in this case has not utilized two separate and distinct administrative remedies available to him. First, the Plaintiff has not exhausted the grievance procedures provided at the Tallapoosa County Jail. Secondly, he has not alleged that he pursued any grievance through the State Board of Adjustment. See <u>Brown v. Tombs</u>, 139 F.3d 1102, 1103-04 (6th Cir. 1998) (requiring prisoners to affirmatively show that they have exhausted administrative remedies). Despite the existence of a grievance procedure at the Tallapoosa County Jail, Plaintiff did not file a grievance with the jail concerning the allegations made the basis of his Complaint. They grievance filed with the Complaint was not filed with the jail, and the Defendants did not receive that grievance until the date they received the Complaint in this lawsuit.

In addition to the grievance procedure at the local level, Alabama law provides the opportunity to file a claim and proceed before the State of Alabama Board of Adjustment pursuant to Ala. Code § 41-9-60. The Sheriff of Tallapoosa County, as are his alter egos, is a state officer and therefore would be entitled to sovereign immunity. See Lancaster v. Monroe County, 116 F.3d 1419, 1429 (11th Cir. 1998). Due to this immunity, the State of Alabama has provided an administrative remedy for the recovery of money damages through the State of Alabama Board of Adjustment.

As a result of Plaintiff's failure to exhaust these two remedies, he is barred from bringing this action under § 1997e(a). See Alexander v. Hawk, 159 F.3d 1321, 1326-27 (11th Cir. 1998) (affirming dismissal of prison action due to failure to exhaust administrative remedies).

      **2.    Plaintiff's claims are barred by the Prison Litigation Reform Act because he has not suffered any physical injury as a result of the allegations in his Complaint.**

"No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury . . . . In order to avoid dismissal under § 1997e(e), a prisoner's claims for emotional or mental injury must be accompanied by allegations of physical injuries that are greater than de minimis." Mitchell v. Brown & Williamson Tobacco Corp., 294 F.3d 1309 (11th Cir. 2002). Because Plaintiff has not made a showing of physical injury, his complaint is due to be dismissed.

      **C.    Alternatively, Defendants are entitled to summary judgment based on qualified immunity because nothing in their conduct crossed a "bright line" contour of clearly established constitutional law.**

Defendants were acting within their discretionary authority as jail officials of Pickens County during all times relevant to Plaintiff's Complaint because all their actions were taken in the furtherance of their duties. See, e.g. Holloman ex rel. Holloman v. Harland, 370 F.3d 1252

6

(11th Cir. 2004). Once a defendant has asserted the defense of qualified immunity and shown that he was acting within his discretionary authority, the threshold inquiry a court must undertake is whether the plaintiff's allegations, if true, establish a constitutional violation. Saucier v. Katz, 533 U.S. 194, 201 (2001). This initial inquiry is whether "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" Id. (citing Siegert v. Gilley, 500 U.S. 226, 232 (1991)). The second inquiry is, if a constitutional violation is stated, were these rights "clearly established" to the degree that these Defendants had "fair warning" that their conduct violated the Plaintiff's constitutional rights? Willingham v. Loughnan, 321 F.3d 1299, 1301 (11th Cir. 2003).

In making an assessment of whether the particular conduct of Defendants was clearly established as being violative of constitutional dictates, the reviewing court must examine the state of law at the time the alleged deprivation occurred. See Rodgers v. Horsley, 39 F.3d 308, 311 (11th Cir. 1994). A constitutional right is clearly established only if its contours are "sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987); Lancaster, 116 F.3d at 1424. "In this circuit, the law can be 'clearly established' for qualified immunity purposes only by decisions of the U.S. Supreme Court, Eleventh Circuit Court of Appeals, or the highest court of the state where the case arose." Jenkins v. Talladega Board of Education, 115 F.3d 821, 827 (11th Cir. 1997) (en banc) (citations omitted).

Assuming, *arguendo*, that the Plaintiff could demonstrate a constitutional violation, he must still show that clearly established law provided the Defendants with fair warning that their conduct was unlawful. He may do so by either (1) pointing to a case with materially similar facts holding that the conduct engaged in was illegal; or (2) demonstrating that a pertinent federal statute or

7

federal constitutional provision are specific enough to demonstrate conduct was illegal, even in the total absence of case law. Storck v. City of Coral Springs, 354 F.3d 1307, 1317 (11th Cir. 2003) (citations omitted). The Eleventh Circuit has identified the latter method as an "obvious clarity" case. Vinyard v. Wilson, 311 F.3d 1340, 1350 (11th Cir. 2002) (footnote omitted). In order to show that the conduct of the Defendants was unconstitutional with "obvious clarity," "the unlawfulness must have been apparent." Willingham, 321 F.3d at 1301. "Unless a government agent's act is so obviously wrong, in the light of pre-existing law, that only a plainly incompetent officer or one who was knowingly violating the law would have done such a thing, the government actor has immunity from suit." Storck, 354 F.3d at 1318 (quoting 28 F.3d at 1149).

"Prisoners must be provided 'reasonable opportunities' to exercise their religious freedom guaranteed under the First Amendment." Hudson v. Palmer, 468 U.S. 517, 523 (U.S. 1984). The Tallapoosa County Jail's policy regarding religious activities of inmates uses the least restrictive means in furthering a legitimate security and safety interest while allowing inmates reasonable opportunities to practice their religious freedom. See Brunskill v. Boyd, 141 Fed. Appx. 771 (11th Cir. 2005). In the instant case Plaintiff had access to scheduled visits with ministers on a weekly basis and had the opportunity to request a visit from a minister of his choice at any time. Further, he was issued a Bible upon his request. Clearly, Plaintiff was provided with reasonable opportunities to exercise his religious freedom. See Stovall v. Bennett, 471 F. Supp. 1286 (S.D. Ala. 1979) (The Jail's obtaining weekly services by a minister was sufficient). Further, upon his request for a larger print Bible, the Jail Administrator purchased a large print Bible and issued it to Plaintiff. See Stovall v. Bennett, 471 F. Supp. 1286 (S.D. Ala. 1979) (holding that the prison chaplain had no duty to begin offering a certain type of religious activity until requested). Because the Defendants in this case have gone above and beyond their

8

duties in providing Plaintiff reasonable opportunities to practice his religion, they have not violated Plaintiff's constitutional rights. Further, Plaintiff cannot show that clearly established law provided Defendants with fair warning that their conduct was unlawful. Therefore, Defendants are entitled to qualified immunity.

### D.    Plaintiff's Claim is Moot.

Plaintiff's claim is solely for injunctive relief. (Plaintiff's Complaint, p. 4). Because Plaintiff has been released from the Tallapoosa County Jail, his claims for injunctive relief are moot. Zatler v. Wainwright, 802 F.2d 397 (11th Cir. 1986). Furthermore, even though the jail did not have any large print Bibles on hand, upon Plaintiff's request, a large-print Bible was purchased and issued to him.

### E.    Summary Judgment Standard

On a motion for summary judgment, the court should view the evidence in the light most favorable to the nonmovant. Greason, 891 F.2d 829, 831 (11th Cir. 1990). However, a plaintiff "must do more than show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Only reasonable inferences with a foundation in the record inure to the nonmovant's benefit. See Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133 (2000). "[T]he court should give credence to the evidence favoring the nonmovant as well as that 'evidence supporting the moving party that is uncontradicted or unimpeached, at least to the extent that that evidence comes from disinterested witnesses.'" Reeves, 530 U.S. at 151, quoting 9A C. Wright & A. Miller, Federal

Practice and Procedure § 2529, p. 299.[1]  "A reviewing court need not 'swallow plaintiff's invective hook, line and sinker; bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like need not be credited.'" Marsh v. Butler County, 268 F.3d 1014, 1036 n.16 (11th Cir. 2001) (en banc) quoting Massachusetts School of Law v. American Bar, 142 F.3d 26, 40 (1st Cir. 1998).

## CONCLUSION

Defendants deny each and every allegation made by Plaintiff John Franklin Milan in the Complaint.  Defendants have not acted in a manner so as to deprive Plaintiff of any right to which he is entitled.

## MOTION FOR SUMMARY JUDGMENT

Defendants respectfully request that this Honorable Court treat their Special Report as a Motion for Summary Judgment, and grant unto them the same.

Respectfully submitted this 31st day of October, 2005.

> s/Amanda Kay Morgan Allred
> GARY L. WILLFORD, JR. Bar Number:  WIL198
> AMANDA KAY MORGAN ALLRED Bar No.  ALL079
> Attorneys for Defendants
> WEBB & ELEY, P.C.
> 7475 Halcyon Pointe Drive (36117)
> Post Office Box 240909
> Montgomery, Alabama  36124
> Telephone:  (334) 262-1850
> Fax:  (334) 262-1889
> E-mail:  aallred@webbeley.com

---

[1] Although Reeves was a review of a motion for judgment as a matter of law after the underlying matter had been tried, the Supreme Court, in determining the proper standard of review relied heavily on the standard for summary judgment stating, "the standard for granting summary judgment 'mirrors' the standard for judgment as a matter of law, such that 'the inquiry under each is the same.'"  Reeves, 530 U.S. at 150, citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-251 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

**CERTIFICATE OF SERVICE**

    I hereby certify that on this the 31st day of October, 2005, I have electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, and that I have mailed a true and correct copy of the foregoing by United States Mail, postage prepaid, to the following non-CM/ECF participant:

        John Franklin Milan
        Tallapoosa County Jail
        316 Industrial Park Drive
        Dadeville, AL  36853

                **s/Amanda Kay Morgan Allred**
                OF COUNSEL